**CALIFORNIA STATE LEGISLATIVE BOARD; United Transportation Union; David W. Eden, Petitioners,**

v.

**Norman Y. MINETA,[1] Secretary of Transportation; Department of Transportation; Jolene Molitoris, Hon.; Federal Railroad Administration, Respondents.**

No. 00–70798.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2001

Filed Dec. 4, 2001

Lawrence M. Mann, Washington, D.C., for the petitioners.

Peter J. Plocki, U.S. Department of Transportation, Washington, D.C., for the respondents.

Before: NOONAN, HAWKINS, and TASHIMA, Circuit Judges.

NOONAN, Circuit Judge:

The California State Legislative Board of the United Transportation Union (the Union) and David W. Eden seek review of a final decision of the Federal Railroad Administration (the FRA) that the San Joaquin Valley Railroad (the SJVR) did not violate the FRA's accident reporting regulations, 49 C.F.R. Part 225 (2001) and,

1. Automatic substitution of this party is required by FRAP 43(c)(2).

in particular, Part 225.33's prohibition of harassment intended to discourage a person from reporting a railroad accident. Holding that the case did not involve a reportable accident, we deny the petition.

### FACTS

The administrative record from which we have drawn the following statement of facts is redolent of the tensions of railroad and roundhouse life, and the several reports and letters give some inkling of why there was sufficient tension between the Union and the carrier for the Union to pursue this case. At the same time none of "the facts" was established by testimony under oath or subjected to cross-examination; and they are narrated here only to give a sense of what led to this petition for review.

On April 11, 2000, David W. Eden, a conductor on the SJVR, detrained in order to line a switch. He "hung" his left toe on trash next to the rails and fell "head over heels." Eden did not seek medical attention, but did the same day file an "Employee Personal Injury and Illness Report" with the SJVR, in which he reported his fall, adding that he didn't "feel any worse for wear at this time—there's no telling if I have injured myself or pulled a muscle. Even though my left toe (big toe) hurt[s] and aches."

The next day, April 12, Donald R. Starr, a SJVR engineer on the train, filed a similar accident report stating he had seen Eden on the ground and getting up limping. Starr added that he had gotten off the engine and "found that ballast around switch was gone and around ties were sticking out with no ballast in between the ties outside the rail."

At 6:00 a.m., also on April 12, Rex Bergholm, the General Manager of the SJVR, inspected the site of the accident with Eden and had photographs taken. Bergholm made out a report the same day.

He noted that on returning from his inspection he found Starr's accident report and questioned him in the roundhouse about it; Starr agreed that he had not seen Eden's actual fall. At 7:45 a.m., Bergholm returned to the scene of the accident with Eden and Safety Officer Paul Goins, Roadmaster Tom Northrup, Superintendent Keith Barksdale, and Manager of Human Resources Loretta Johnson, to take more pictures and observe the walkups. Eden "read and acknowledged" the report made by Bergholm.

Later the same day, Eden wrote a letter to a "Mr. Howe," either a representative of the Union or of management, stating that the visit of the group to the site had made him "uneasy" as though his honesty were being doubted. He also said that one statement in Bergholm's report was not correct, viz. that the ballast "was even and there were no holes or uneven conditions in the ballast."

On April 16, Starr wrote a letter to James (J.P.) Jones, the state legislative director of the Union. Starr stated that Bergholm, after he had read Starr's report on April 12, had told him that it was a false report, that he [Starr] could not have seen Eden lying on the ground. According to Starr, Bergholm had also called him [Starr] "dumb and stupid." Starr had challenged Bergholm to a fight, an invitation Bergholm declined. On April 15, Starr added, he'd apologized to Bergholm.

On April 27, Starr wrote a second letter to Jones. He noted that Jones had "the accident report" in his possession, but that Bergholm now wanted Starr to revise it to say that he didn't see Eden trip and that the place of the trip was different from what was first reported. Starr said he had stood by his report and had told Bergholm that Bergholm "was trying to settle a FELA case that doesn't exist. Mr. Eden did not miss any work or even see a doc-

tor." Bergholm had replied by calling him "a joke" and threatening to call an investigation and fire him for insubordination if he didn't revise the report. Another letter from Starr to Jones, on April 28, said that Bergholm had again threatened him with an investigation unless he changed the report.

On May 1, Eden wrote Jones that on April 21, he had been told to sign a letter on "how to line a . . . switch." The letter made no sense to him so he refused. On April 24, Bergholm told him to sign the letter or be charged with insubordination and dismissed; so he had signed.

### PROCEEDINGS

On April 17, 2000, the Union sent a complaint letter to the FRA claiming that the SJVR and its officials violated 49 C.F.R. § 225.11 by harassing and intimidating Eden and Starr. The Union charged that Bergholm had "harassed and intimidated Conductor David Eden to modify and/or withdraw his report of an accident that took place on April 11, 2000" and that he had also "attempted to harass and intimidate other employees who witnessed the accident" into altering their reports of the incident.

On May 25, 2000, George Gavalla, the FRA's Associate Administrator for Safety, wrote a letter in response, asserting that there was insufficient evidence to sustain a case of intimidation or harassment of Eden by railroad officials in violation of 49 C.F.R. § 225.33. The letter stated: "We could not prove that the SJVR engaged in actions that were calculated to discourage or prevent Conductor Eden from completing a personal injury report, or from receiving prompt medical treatment had he desired to seek medical attention. . . . The FRA was unable to find supporting evidence to corroborate Engineer Starr's allegations."

The FRA also stated that the anti-harassment provisions only applied "to the report prepared by the person that was involved in the incident, i.e., Conductor Eden," and asserted that the regulations at issue did not apply to Starr because he was a witness rather than the employee injured. "The FRA's anti-harassment provision in this case would not apply to statements of witnesses or other persons not injured or not directly involved in Conductor Eden's injury. . . . Remarks were allegedly made by Mr. Bergholm that Engineer Starr found to be offensive and degrading. . . . While these matters concern us, and are not condoned by the FRA, they fall outside the scope of existing Federal Railroad safety regulations."

The Union and Eden petition for review.

### ANALYSIS

Accidents to railroad employees, passengers, and other persons have always been the accompaniment of railroading. It's in the nature of the business. Accurate reporting of the accidents is essential to improving prevention. The danger of inaccurate reports was noted almost a century ago. S.Rep. No. 61–240, at 2 (1910). The danger that management might prevent accurate reporting has been anticipated by FRA regulations requiring each carrier to adopt an Internal Control Plan that provides:

A policy statement declaring the railroad's commitment to complete and accurate reporting of all accidents, incidents, injuries, and occupational illnesses arising from the operation of the railroad, to full compliance with the letter and spirit of FRA's accident reporting regulations, and to the principle, in absolute terms, that harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving prop-

er medical treatment or from reporting such accident, incident, injury or illness will not be permitted or tolerated and will result in some stated disciplinary action against any employee, supervisor, manager, or officer of the railroad committing such harassment or intimidation. 49 C.F.R. § 225.33(a)(1) (2001).

The Accident Reports Act requires each railroad carrier to file, under oath, a monthly report with the Secretary of Transportation listing "all accidents and incidents resulting in injury or death to an individual or damage to equipment on a roadbed arising from the carrier's operations during the month." 49 U.S.C. § 20901(a) (2001). By regulation, the FRA has distinguished injuries required to be reported under the statute and those that do not have to be reported. A reportable injury is an injury to any person "that requires medical treatment" or an injury to a railroad employee "that results in (i) a day away from work; (ii) restricted work activity or job transfer; or (iii) loss of consciousness." 49 C.F.R. § 225.19(d)(2) and (3) (2001).

Eden did not require medical treatment, lose consciousness, or suffer a day away from work or work restriction or job transfer by the carrier. His fall on April 11, 1999 was not a reportable accident. The SJVR could not have violated the Accident Reports Act by acts in connection with a nonreportable accident.

The petition for review is DENIED.